I understand that the Court was expecting Mr. Paul McCarthy today. I do apologize he was not able to come today, and knowing that the Court does not like continuances, I, who am a colleague of Mr. McCarthy, is appearing on his behalf and prepared to argue. Thank you. As I stated earlier, I am representing Appellant Mr. Willis Creech in this case, and there are three issues to discuss today, though I will primarily spend most of my time on the first issue. I will reserve about two minutes for rebuttal, and I'll do my best to maintain my time. The Court is aware that three issues that were certified were the sufficiency of the evidence as to the assault charges, the three charges of assault, the sufficiency of the evidence as to the two counts of child endangerment, and whether or not the imposition of the aggravated terms violated the petitioner's right to a jury trial. And again, I state that I want to spend most of the time on the first initial argument, because I think that that argument actually can be divided up into several sub-arguments, one being whether or not there was sufficient evidence for all three counts of assault, and then the second, whether or not there was sufficient evidence as to the counts of assault as to Ms. Rush and as to Ms. Curry. Now, I know that the briefing extensively discussed the question of present ability, and I know that there has been cases cited by Respondents, specifically people v. Brevard, if I'm not mistaken. I do apologize if I mispronounce it. But I wanted to point the Court's attention to that Valdez case, because I don't think that it was properly expressed dicta that was listed near the end of that decision. Now, the Court is familiar with people v. Valdez. That's an instance in which a person arrived at a gas station trying to shoot the clerk, and the clerk then ran behind a bulletproof gas, and the defendant in that case shot at the bulletproof gas. And the Court had said the fact that he was prevented from being able to shoot at his intended target did not preclude the ability to find him guilty of assault with a firearm. And I think, though, it's important for the Court to take note of what the Court said after. It said we need not decide a case in which a defendant, knowing the victim is behind a barrier and still nonetheless shoots. And I think that's important, because that's what we have in this case. Someone who, again, assuming you take the jury's verdict that Mr. Creech knew there was individuals in the house, and I don't think that the evidence supported that conclusion. But even if you take that conclusion as true, this Court still has to make a determination as to whether or not the fact that the victim did nothing to prevent or to thwart the defendant from achieving their ultimate goal can still constitute assault with a firearm. And I think that's why it goes to the second question of the assault as to Ms. Rush and as to Ms. Curry, and I think specifically as to Ms. Rush. Again, the testimony and the evidence that was produced at trial in this case indicated that Ms. Rush was behind a solid wood door in this case, and that the defendant shot three times towards that solid wood door. The only testimony that the Court received in that case as to Ms. Rush is that Ms. Rush approached the door to lock it, not that she went to close it, not that the door was open and that there was no barrier between her and Mr. Creech, but that she simply went to lock it. And then the question is for this Court to determine as to whether or not that constitutes sufficient evidence as to assault with a firearm as to Ms. Rush. Because the shotgun had birdshot? I think that's part of it. But, again, if we go back to the Valdez decision, that Valdez decision talked about that Don Quixote moment, that I know you're behind the glass and I'm still shooting anyways, and I'm going to try and break the glass. And I think that for the purposes of our analysis here, yes, the birdshot is relevant because of the testimony that was at trial was a question of whether or not a larger slug, again, in that case a buckshot or any sort of actual slug, would have, I think the quote was, gone through the door like butter. And yet we have birdshot here. And so it is relevant because there's, in this instance, a person utilizing a minimal or nominal gauge of ammunition shooting towards a solid wood door. But there is no evidence that he couldn't have approached the house more closely. That he could have? He could not have. He could have. He could have. Absolutely. If he had gotten closer, obviously, the birdshot would have been more effective. I would agree, Your Honor. But I think given the fact, and I do apologize for interrupting, and I think that's why this is important, because the Court has to analyze this case given the facts that were presented. Obviously, the case would be different if he was shooting from a distance that I am from you. You're correct. That would be different. It would be different if that door was open. It would be different if he had the ability to walk up a few more steps. That's true, Your Honor. But again, if the question is, given the evidence presented, was there sufficient evidence in this case to find that the Mr. Creech was guilty of assault with a firearm as to that count, I don't think it reaches that burden. Let's talk about some of the evidence here. Of course. I made some notes that there was evidence that Creech tracked Jennifer to the broken window and was shot by Jennifer. Is that correct? Again, that was Ms. Crush's testimony. I apologize. It was Jennifer Crush's testimony, that she believed that he was tracking her. Now, there's some discrepancy, I think, with that. And I think that's a correct factual statement from Ms. Crush. But the question is, does the evidence support that conclusion? Then also, this is the evidence here that I would agree with, Your Honor. And I don't think that those are inaccurate statements of the facts. I do, however, think that — I will give the example. The door here is closed. Unless I have X-ray vision, I don't actually know who's behind that door. Now, again, I do agree that Ms. Rush's testimony is that she believed she locked her eyes with Mr. Creech. But what she's testifying to is she's looking through a smaller window that's to the top nearer of the door, and she's looking out. And there is no question that Mr. Creech himself acknowledged that he was shooting towards the door, and I am gesturing that direction. I do agree, and I think that's why I keep going back to this Valdez case, because the Court in Valdez acknowledged that there can be a situation where, and I'll use the example, if I knew that there was a bulletproof glass in front of Your Honors, knowing that, I still shoot. Am I guilty of an assault with a firearm? And I think the Valdez court tells us, no, you are not, despite knowing that there's individuals behind this protective barrier. I think you're assuming this is a pretty comfortable situation. I don't think there's a problem with that. I mean, there was a kid who was told several days ago that he should have a buckshot. All you need is a battery. You don't need a gun. There's a danger of that. I agree. And I think it's still important to go back that it's birdshot, not buckshot. I've made the same mistake. But I do think, because the evidence that was presented indicated that that birdshot was only able to penetrate that door an eighth of an inch. And the test, if I'm not mistaken, the record indicated that door was at least an inch thick. And so to that, I think that's why, again, I think it's focusing on the question of Ms. Rush. I think it's a closer cause to Ms. Curry, because, again, there's the question of whether or not that the gun followed her through the window. But the door is where I think that this Court really should take a closer look at. And I realize that I'm reaching the end of my time, and I'll reserve the remainder for rebuttal. Thank you. Thank you. Good morning. May it please the Court. Jill Thayer for Bonneville. I'm going to start with the petitioner's, it was footnote 1, page 3 of the reply, where the petitioner starts talking about Valdez and Raviar and supposedly respondents' reliance on those cases. I just want to clarify, it's the State Court in this case that's relying on those California cases, not respondents, not me, the State Court. And that's important because it's the State Court's determination of California law that applies in this case. And I just want to say that also the facts in Valdez is the clerk was always in that cashier booth. There's no evidence that the clerk wasn't ever in that cashier's booth. At one point, when the defendant in that case pulled up his jacket and exposed a It sounds like a little opening. It was a gas station. And there's a little opening behind the window. And the clerk moved away from that little opening so that he was fully behind the bulletproof glass. That's when the defendant shot several times. Then, of course, it didn't work because the glass was bulletproof. And not only in Valdez, but also in Chance, which is a later Cal Supreme Court case, and also the State Court in this case, they all define that issue as does a man who fires a loaded gun at another have a present ability to inflict injury where the victim is behind a bulletproof window? So it's the State Courts that are all saying, yes, that's assault. That's assault under California law. It's not the equivalent of having an unloaded gun, which is not. And that's not the case in this case. Obviously, the gun was loaded, or the shotgun was loaded. So I just wanted to clarify those facts and also clarify the facts also in Raviar. But, you know, there's no case like this in the sense that, although you say in those cases the weapon was loaded, there was no issue about the kind of ammunition the weapon was loaded with, or the difference. But there's probably, today, some kind of weapon that they go for. Right? There could be. And so, you know, there was no contention about what kind of weapon or ammunition was going to be done. But that's the big issue here. So those cases don't address all squares of the ammunition issue. Insufficient, that is. I can't do anything on that question. It's not that there's some, you know, there's a blockade. Okay. That is another issue that was raised by Petitioner. And that's a valid issue. And the way it seems to me is on one end, you've got an unloaded gun. On the other end, in the opening brief, Petitioner, and now it seems like Petitioner is conceding, look, if he used buckshot or a slug, which would have gone through that door like butter, that would have been an assault. So he's conceding there, and we're all conceding if it was unloaded, no. No assault. So then the question is, okay, this is number eight pellets. Is that more like unloaded, which is what Petitioner is saying, or like buckshot or a slug, which definitely would have been assault? And here, we're on habeas. We're looking at the state court judgment. And it's perfectly rational for the state court to say, you know, he had number eight pellets. They were able to break glass. They were able to make holes in the windows. They did enter into the study. And I know there was a lot in the reply about whether or not they got in the study. I think the facts are very, very clear in this case that they were in the debris from the sweeping. They were in the vacuum cleaner. And that would be at the SCR 26. They were clearly. Most of the pellets were deformed, which a jury could infer not all the pellets were deformed. So they got into the study. Clearly, it was reasonable for the state court to say, you know what? This is more like something bigger, and this is enough for an assault, as opposed to an unloaded weapon or a toy gun. If it was a toy gun, okay, we all concede, not assault. If it was unloaded, not assault. But here, number eight pellets, that's enough. And that was reasonable. And it wasn't totally irrational for the jury to find. He did have the presentability. He could have run towards the windows. He could have shot. And there were windows. It wasn't. What was the testimony about how far he was? There was a little bit of a dispute. Now, the prosecution's expert said he was 45 feet from the study and 20 feet from the door. And there was a little bit of discussion. Julianne was the person who was at the door, and she said he was something like 20 to 15 feet away. She seemed to think he was very close, and they were able to lock eyes. And then I think some of the evidence showed that he was 40 feet away, possibly, from the study. But it was close enough to break the window. Okay. Tell me, I don't recall, how many of these pellets actually had been found. He didn't give a precise number. Was he? Sorry, Thornton. Thornton. The prosecution's expert, Thornton, he didn't give a precise number. He said quite a number of pellets in the cardboard box of glass and debris, which was, they described them as sweepings, so they swept the floor. And then he also mentioned it was a vacuum cleaner without a bag, you know, a bagless vacuum cleaner. And he also found pellets inside that vacuum cleaner. And that is an SER-26. But basically, he said quite a few. He didn't quantify it. He just said generally. Yes. It was quite a few. That was the closest number he could give. And he also did say he didn't see any in the bark outside. And he didn't think they could have fit in that space between the two glass. Now, it's interesting. I think this case is quite a bit similar to Valdez, because it was a double paint. Those were double-painted windows. They weren't single-paint. And it's interesting that there's a window in the front door, and just the first, just the first pane of glass was broken. It didn't go through the two panes of glass in the window in the front door, just one. But I think that is very similar, and it's certainly not unreasonable for the state court to say, you know, that's similar to Valdez. It wasn't bulletproof glass, but it was double-painted. And it did give that family some little bit more protection than it would have if it was just single-painted glass. If there are no other questions, I'm prepared to submit. There was one other issue in there. This is another case where there was another issue about the sentencing. Yeah. Well, there was another issue about aggravated sentencing. And I think it's very clear, and it's cited in my briefs, that the law had changed in California, and it was clear that the legislature switched it and said it's okay, you know, a judge can sentence under any of those three. And so, and this Court, I believe, is the public. The middle range is not the presumptive range. Yes, there doesn't need to be additional fact-finding in order to sentence to the upper term. And I think that's clear in this case. And it certainly wasn't objectively unreasonable for the state court to say, you know what, the judge didn't need to find additional facts, so Cunningham doesn't apply. Thank you. A few points on rebuttal. Justice Yuma, I think I want to pick up on your line of thought here on whether or not the facts of the cases that California has decided fit this case. And I think the three factors that we need to consider are, did the victim move or thwart the assault? And that goes to the question of Valdez. Was there a barrier between the victim and the shooter? But more importantly, I think the Court is correct in mentioning that the ammunition in this case is far more relevant than potentially in other cases. And certainly, when considered in the fact of these other factors of did the victim move, was there a barrier, it does fall within this range. Well, as I said, Your Honor, I think there's a question of whether he's guilty of all three assaults, and whether there's sufficient evidence as to the later assaults as to Ms. Curry and Ms. Rush. Yes, Your Honor. Yes, Your Honor. I think you do. I think you have to.  evidence as to the later assaults as to Ms. Curry and Ms. Rush. I think there's a question of the barrier. And if you know that there's a barrier. Your Honor, I do not see my time is up. No, no. Okay. Do we concede that the facts warrant a finding on all three or each individual? Your Honor, if I were to be placed on the spot, I think the question is, is I think there's sufficient evidence as to Sophia. I do not think there's sufficient evidence as to Ms. Rush. And I actually don't think there's sufficient evidence as to Ms. Curry. Okay. Yeah. Okay. I realize I don't have enough time to address the sentencing issue. I believe it's been adequately briefed. So, thank you for your time. Thank you. The matter is submitted at this time. Thank you, counsel.
judges: Block, Tashima, Paez